Roosevelt HODGE, Appellant,

v.

STATE of Texas, Appellee.

No. 11–95–118–CR.

Court of Appeals of Texas, Eastland.

Feb. 6, 1997.

Gary A. Udashen, Milner, Lobel, Goranson, Sorrels, Udashen & Wells, Dallas, for appellant.

John C. Vance, District Clerk, Sue Koroith, Frank Crowley, Dallas, for appellee.

Before ARNOT, C.J., and DICKENSON, J., and McCLOUD, Senior Justice.[1]

AUSTIN McCLOUD, Senior Justice (Retired).

The jury found appellant guilty of capital murder, and the trial court assessed appellant's punishment at confinement for life.[2] We affirm the conviction.

The sufficiency of the evidence is not challenged. The record reflects that appellant murdered two female victims during the same criminal transaction. Appellant went to an apartment in Dallas around 3:30 a.m. where the victims and several other people were watching television. Appellant talked to each victim separately just outside the apartment door. Each victim returned to the apartment. Appellant then returned to the apartment and asked one of the victims to again step outside. Shortly after the victim left the apartment, the people in the apartment heard gunshots from a shotgun and a pistol. The victim was shot and killed on the stairwell outside the apartment. Appellant then entered the apartment and shot and killed the other female victim. Appellant also shot and seriously wounded a male who was in the apartment. Appellant then fled the murder scene. The next day, appellant was arrested in Corsicana.

Appellant was identified by the people in the apartment as the person who came to the apartment and talked with the two female victims. Appellant was identified as the person who entered the apartment after the first victim was shot and who shot and killed the other female and wounded the male. Appellant shot the two people in the apartment with a pistol.

The pistol was never recovered. However, the 20-gauge sawed-off shotgun that was used in the murder of the first victim was recovered when appellant was arrested. Both female victims were shot with a 9 millimeter semi-automatic pistol. Both victims were shot with the same handgun.

---

1. Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

2. The State did not seek the death penalty; therefore, appellant received a mandatory life sentence. TEX.PENAL CODE ANN. § 12.31 (Vernon 1994).

■ Appellant complains in his first point of error that the prosecutor committed error at the end of her closing argument on guilt/innocence when the prosecutor stated:

So I ask you to go back there, vote, come back with capital murder, so we can get on with more important things, as in punishment.

First, we question whether appellant preserved error with his general objection, "I would object to that as being improper argument." The court in *Everett v. State,* 707 S.W.2d 638 (Tex.Cr.App.1986), held that the general objection, "we would object to that as being improper argument," preserved error where the very nature of the argument coupled with defense counsel's objection informed the court of the nature of the error. The court observed that the admonitions given by the trial court to the prosecutor showed that the court understood the objection. In *Martinez v. State,* 833 S.W.2d 188 (Tex.App.—Dallas 1992, pet'n ref'd), the court held that a general objection that the prosecutor's argument was improper, inflammatory, and prejudicial was sufficient where the record disclosed comments by the court showing that the court understood the objection. We point out that there are no admonitions or comments by the trial court showing that the court understood the objection. However, because other courts have found that such an objection preserved the right to complain of error, we will assume that the alleged error was preserved.

Appellant cites *Cherry v. State,* 507 S.W.2d 549 (Tex.Cr.App.1974), and *Kelly v. State,* 903 S.W.2d 809 (Tex.App.—Dallas 1995, pet'n ref'd), to support his argument. The prosecutors' comments in both *Cherry* and *Kelly* essentially told the jury to ignore their duties to decide guilt or innocence because the only issue in the case was what punishment should be assessed to the defendant. This analysis of *Cherry* was discussed in *Mann v. State,* 718 S.W.2d 741 (Tex.Cr.App.1986), *cert. den'd,* 481 U.S. 1007, 107 S.Ct. 1633, 95 L.Ed.2d 206 (1987). The prosecutor in the instant case, as reflected by the full context of the argument, was urging the jury to find appellant guilty of capital murder rather than the lesser included offense of murder so

that appellant's punishment would be set by the court at life in prison. The prosecutors in *Cherry* and *Kelly* were telling the jury to disregard the guilt/innocence stage because it was not important. The prosecutor in this case was arguing that the evidence should be carefully considered by the jury and that the jury should find appellant guilty of capital murder. The prosecutor was not suggesting that the jury ignore their duties at the guilt/innocence stage of the trial; on the contrary, the prosecutor was pleading with the jury to fulfill their duty and to find appellant guilty of capital murder. This was a proper plea for law enforcement. Appellant's first point of error is overruled.

Appellant argues in his second point of error that the court erred in permitting the State to present evidence connecting appellant to an extraneous offense when the State failed to give appellant notice of its intent to offer such evidence after appellant timely requested such notice. In his third point of error, appellant maintains that the court erred in allowing the State to present testimony connecting appellant to an extraneous offense in violation of TEX.R.CRIM.EVID. 404(b).

The next day after the murders, appellant was arrested in Corsicana, along with four or five other young males. The testimony revealed that, at the time of the arrest, appellant and the other young males were in a "stolen" car. When the car was stopped, the youths fled on foot. When appellant was arrested in a nearby vacant house, he gave a false name. The arresting officers recovered the shotgun at the scene of the arrest that had been used to kill the first female victim.

■ Appellant argues that the State failed to give him notice that the State intended to introduce evidence that appellant was arrested after fleeing from a "stolen vehicle." The court in *Rogers v. State,* 853 S.W.2d 29 (Tex. Cr.App.1993), recognized that same transaction contextual evidence may arise at the time of arrest just as res gestae evidence had in the past been characterized as "res gestae of the arrest." See also *Mayes v. State,* 816 S.W.2d 79, 84–87 (Tex.Cr.App.1991). Here, after killing the two victims, appellant fled the scene of the murders. Appellant's flight

was admissible on the issue of his guilt. *Burks v. State,* 876 S.W.2d 877 (Tex.Cr.App. 1994). The automobile in which appellant was riding was stopped by Corsicana police officers because of a stolen car report. The jury's understanding of the two murders would have been "impaired or clouded" without the evidence of flight and facts surrounding the stopping of the stolen automobile. Therefore, we hold that the challenged evidence was proper "same transaction contextual evidence."

■ Rule 404(b) provides that notice must be given to the accused, upon timely request, of the State's intent to introduce extraneous crimes "other than that arising in the same transaction." The court in *Camacho v. State,* 864 S.W.2d 524 (Tex.Cr.App.1993), held that same transaction contextual evidence was not subject to a limited instruction requirement. We hold that same transaction contextual evidence is not subject to the requirement in Rule 404(b) that the State must give the accused notice of the State's intent to introduce such evidence. Rule 404(b) by definition excludes from the notice requirement crimes arising in the "same transaction." Therefore, the court did not err in permitting the same transaction evidence even though the State did not give appellant notice that the State intended to introduce this evidence in the State's case-in-chief. Appellant's second point of error is overruled.

■ Appellant contends in his third point of error that the evidence of the stolen car was not admissible under rule 404(b) because it was only relevant as supporting an inference of character conformity. This objection was not raised at the trial court. Appellant's objection at trial was that the evidence was not admissible because he had not been given notice that the State intended to introduce the evidence. Appellant's objection at trial does not comport with the point of error raised on appeal. TEX.R.APP.P. 52(a). An objection stating one legal theory may not be used to support a different legal theory. Camacho v. State, supra. Furthermore, we have held the evidence was admissible in our discussion under appellant's second point of

error. We, therefore, overrule appellant's third point of error.

■ In his fourth point of error, appellant urges that the court erred in overruling his objection to the State's peremptory strike of Brenda Thompson, an African–American member of the jury panel. During the *"Batson"* hearing,[3] the prosecutor gave as his race neutral reason for striking Thompson that the prospective juror was struck because of her failure to be honest about her criminal record. The prosecutor asked the jury panel if any member of the panel had been charged with a crime. Thompson failed to respond to the question. The prosecutor presented to the court a computer printout showing that someone with the same name as the prospective juror and the same birthday had been charged with a crime. The prosecutor stated to the court that all of the other members of the jury panel who had any type of criminal charge or conviction had been honest, and, therefore, they were not struck by the State. The prosecutor stated to the court that he believed that the prospective juror had been "less than honest and less than forthright." Appellant did not refute the prosecutor's explanation by either an offer of proof or by bill of exception. See *Salazar v. State,* 795 S.W.2d 187 (Tex.Cr. App.1990).

The reasons given by the State were race-neutral. There is nothing in the record to show that the reasons given by the prosecutor for striking the prospective juror were pretextual. We hold that the trial court did not err. See *Lightner v. State,* 843 S.W.2d 161 (Tex.App.—Texarkana 1992, no pet'n). The fourth point of error is overruled.

■ Next, appellant asserts that the trial court erred in allowing the prosecutor to frame a question as an affirmative assertion of fact. During the direct examination by the prosecutor of the male victim who was shot by appellant at the apartment, the following occurred:

Q: Now, prior to the defendant shooting Normetha Dunning, also known as Mesha, and Dorothy Williams, known as ReRe, and him shooting of you—

---

3. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

[DEFENSE COUNSEL]: I'm going to have to object to her leading her witness.

THE COURT: Well, let me hear the whole question.

Q: [PROSECUTOR] At any point in time, was anyone arguing with the defendant, fighting with the defendant, causing any kind of commotion toward the defendant?

A: No.

[DEFENSE COUNSEL]: Once again, I would object to her leading her witness.

THE COURT: Overruled.

[DEFENSE COUNSEL]: She testified. And I object to her testifying because there is no evidence yet that my client shot anyone on the outside, but from what the prosecutor testified to, and I object to that.

THE COURT: Your objection is overruled.

On appeal, appellant challenges that part of the question where the prosecutor stated, "Now, prior to the defendant shooting Normetha Dunning, also known as Mesha, and Dorothy Williams, known as ReRe, and him shooting of you." Appellant argues that it was a disputed issue as to whether appellant shot Dunning outside of the apartment. No witness testified to seeing appellant shoot Dunning. The State answers the argument by pointing to circumstantial evidence that appellant shot Dunning.

When the challenged question was asked, the objection was that the question was "leading." The question was not leading; it did not suggest the desired answer. *Ballew v. State*, 452 S.W.2d 460 (Tex.Cr.App.1970). At that point, there was no objection that the question was argumentative because it assumed a disputed fact. Then, following the court's remarks, the prosecutor reworded the question. Appellant again objected that the question was leading. That objection was overruled. The reworded question did not assume that appellant shot Dunning (the first female victim who was murdered).

■ The question challenged on appeal was withdrawn by the prosecutor when the prosecutor asked a different question regarding whether anyone was arguing or fighting with appellant. The general rule is that the

mere asking of an improper question may be cured by the withdrawal of the question. *Rogers v. State*, 725 S.W.2d 350 (Tex.App.— Houston [1st Dist.] 1987, no pet'n). This is not an "extreme case" where the question is obviously harmful to appellant or where the question was without evidentiary foundation and was clearly calculated to inflame the minds of the jurors. The record contains strong circumstantial evidence that appellant shot Dunning. Appellant's fifth point of error is overruled.

■ In the sixth point of error, appellant maintains that the court erred in allowing the State to present bolstering testimony from a police officer that two State's witnesses picked appellant's photograph out of a lineup. Joseph McGowan and Karry Robinson both testified that they identified appellant in a photo lineup. Both witnesses were cross-examined regarding their identification of appellant. Thereafter, the State called Detective D.A. Watts who testified regarding the photo lineup. Detective Watts testified, over appellant's bolstering objection, that the two witnesses had selected appellant's photograph out of the lineup. Bolstering is no longer a valid objection to the challenged testimony. *Cohn v. State*, 849 S.W.2d 817 (Tex.Cr.App.1993); *Smith v. State*, 830 S.W.2d 328 (Tex.App.—Houston [14th Dist.] 1992, no pet'n). The sixth point of error is overruled.

■ In his last point of error, appellant urges that the trial court erred in allowing Detective Watts to testify, over his hearsay objection, as to what he learned through his investigation regarding the motive for the killings in this case. The record reflects the following testimony on redirect by Detective Watts:

Q: Now, let's talk about the robbery that you talked about when [DEFENSE COUNSEL] asked you a question of what was behind the killing or what you believed to be behind the killing.

A: Yes, ma'am.

Q: And through your investigation, did you make a determination as to the motive behind the killing in this case?

A: Yes, I did.

[DEFENSE COUNSEL]: Objection. Calls for speculation.

THE COURT: Overruled.

[DEFENSE COUNSEL]: Note our exceptions.

Q: [PROSECUTOR] Would you tell the members of the jury what your investigations revealed to you?

A: The defendant and others robbed a trap across the street from the Crest A Apartments. The dope dealer in that particular trap took exception to it because there was some injuries and what have you. He put out a $50 reward, rock reward for the highjackers, the robbers.

Mesha went to them and gave them the information that they needed as to who was the one that robbed them or assaulted them or what have you. And she took her $50 rock.

[DEFENSE COUNSEL]: Your Honor, I object. That calls for hearsay.

THE COURT: Overruled.

[DEFENSE COUNSEL]: Note my exception.

A: Her and ReRe were going around the Crest A Apartments with a large amount of drugs and also telling how they came to have the drugs.

And the highjackers found out about it and went back over there to take care of business.

The State cites *Ramirez v. State*, 815 S.W.2d 636 (Tex.Cr.App.1991); *Burnett v. State*, 842 S.W.2d 296 (Tex.App.—Forth Worth 1992, pet'n ref'd); and *Williams v. State*, 826 S.W.2d 783 (Tex.App.—Houston [14th Dist.] 1992, pet'n ref'd), to support its position that the testimony was admissible as the opinion of an expert under TEX.R.CRIM.EVID. 705. We disagree. Detective Watts was testifying as to his investigation of the murders based upon what he had been told by numerous witnesses. He was not testifying as to "scientific, technical, or other specialized knowledge" that would "assist the trier of fact to understand the evidence." TEX.R.CRIM. EVID. 702. Furthermore, no attempt was made by the State to qualify Detective Watts as an expert to give his opinion on the motive for the murders, and the State did not offer his opinion as the opinion of an expert.

We hold, however, that the court did not err in permitting Detective Watts to give his opinion as to the motive for the murders. Appellant opened up the issue during cross-examination of Detective Watts. In answering a question asked by appellant regarding information that Detective Watts had received from witnesses, Detective Watts answered:

A: That this was more or less a retaliation for Mesha snitching the defendant and several others at a trap or dope house.

Q: A dope trap?

A: That's correct.

Q: That Mesha had been to?

A: Right. It was across the street from the Crest A Apartments.

During cross-examination, Detective Watts was asked by appellant if he had any information that the murders arose out of "any kind of robbery or anything of that nature." Detective Watts answered "Yes." Furthermore, essentially the same testimony being challenged was given by Detective Watts at other times during his questioning without objection.

The record reveals that appellant's hearsay objection was not timely. He did not object until Detective Watts finished his answer. *Dinkins v. State*, 894 S.W.2d 330 (Tex.Cr. App.), *cert. den'd*, —— U.S. ——, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995); *Guzman v. State*, 521 S.W.2d 267 (Tex.Cr.App.1975). Appellant did not continue to object each time the challenged evidence was offered. *Ethington v. State*, 819 S.W.2d 854 (Tex.Cr.App.1991). Appellant opened up the issue regarding information that Detective Watts had received during his investigation. Appellant did not object when Detective Watts stated that it was a retaliation. Appellant has failed to show error. The final point of error is overruled.

The judgment of the trial court is affirmed.